**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CR-51-TS |
| | ) | |
| JERMAINE ASKIA COOPER | ) | |

**OPINION AND ORDER**

With a search warrant in hand, the police raided Defendant Jermaine Askia Cooper's

home and found drugs and related paraphernalia, firearms, and cash. As a result, the Defendant

was charged with drug trafficking offenses. The Defendant has moved to suppress the evidence

on the ground that the affidavit submitted with the search warrant application did not establish

probable cause to believe that evidence of a crime was located at the Defendant's residence. For

the reasons set forth in this Opinion and Order, the Court does not find the Defendant's

arguments persuasive and denies the Motion to Suppress.

**BACKGROUND**

On May 7, 2009, a state court judge signed a search warrant [DE 24-2] authorizing the

Fort Wayne Police Department to enter a specific residence to search for cocaine and its

derivatives, items used to prepare and "cook" crack cocaine, materials related to packaging and

distributing narcotics, United States currency, firearms, records of drug transactions,

documentation related to ownership of the building, and United States currency that had been

used by the Fort Wayne Police Department to purchased controlled substances. On May 11,

2009, police searched the Defendant's residence pursuant to the search warrant.

The only evidence presented to the issuing judge to support the warrant was Detective

Brown's Search Warrant Affidavit [DE 24-1]. The following information was provided in that Affidavit.

On June 11, 2008, the Fort Wayne Vice and Narcotics Division received a Crime Stopper Tip from a person who stated that cocaine was being sold from behind the bar at an establishment called the Dove Shack and that minors were being served alcohol. The tipster stated that several drug dealers were hanging out at the bar, and identified the bar manager as Jermaine Cooper. The caller said that Cooper carried a gun.

On April 15, 2009, Detective Brown was contacted by Confidential Informant (CI)-1521, who indicated that he[1] could buy crack cocaine from "Coop" at either the Dove Shack, which the CI believed Coop owned, or at Coop's residence. The CI advised that he could buy a gram of crack cocaine for $100. On this same day, Detective Brown met with CI-1521 to set up a controlled narcotics purchase. Detective Brown took CI-1521 to a pre-determined location where a pre-buy search of the CI and his vehicle revealed no contraband. CI-1521 was fitted with an electronic transmitting device and given $100 pre-recorded buy money. CI-1521 then made a call to Coop and advised that he was ready. Coop arranged for them to meet at a local gas station. CI-1521 went to the gas station and parked in an area where an undercover officer could maintain constant surveillance. The officer saw a black SUV with dealer plates arrive at the station and a large black male approach CI-1521, who then handed the man the $100 he had been provided by the police. The man counted the money and handed CI-1521 a small baggie containing several small rock-like substances of suspected crack cocaine. One minute after arriving at the station, the man in the black SUV left, with undercover detectives maintaining

---

[1] The Affidavit does not actually specify the gender of the confidential informant, but for ease of reference the Court will use the masculine pronoun to refer to CI-1521.

visual contact and following him to the Dove Shack. An undercover detective saw the man walk through the front entrance of the Dove Shack. Detective Brown followed CI-1521 to a pre-determined location and conducted a post-buy search of CI-1521 and his vehicle, and no items of contraband were found. Detective Brown debriefed CI-1521, including showing him a photograph array from which he positively identified Jermaine Cooper as the person who sold him the cocaine. The white rock-like substance field tested positive for cocaine and had a net weight of 1.6 grams.

Five days later, on April 20, CI-1521 again contacted Detective Brown and advised that he had talked to Cooper and told Cooper that he wanted to purchase half an ounce of crack cocaine. Cooper had advised that it would cost between $500 and $600, but that he did not want to discuss it any further over the telephone. Detective Brown met CI-1521, conducted a pre-buy search that revealed no contraband, fitted CI-1521 with an electronic transmitting device, and gave him $500 of pre-recorded buy money. CI-1521 called Cooper and advised that he was ready, and Cooper told CI-1521 to come to his residence. CI-1521 drove his own vehicle to Cooper's residence while Detective Brown hid in the back seat. When they arrived at the house, CI-1521 walked up to the residence and made contact with Cooper, who then went into the kitchen area and retrieved a small baggie containing a white rock-like substance of suspected crack cocaine. Cooper returned to the CI and handed him the baggie. After Cooper realized that CI-1521 wanted $500 worth of crack cocaine, he returned to the kitchen to add more to the baggie. Cooper and CI-1521 then exchanged the baggie containing the suspected cocaine and the $500. Four minutes after first arriving, CI-1521 returned to his vehicle and drove away. Once out of the area, CI-1521 handed Detective Brown the baggie of suspected crack cocaine, which field

tested positive for cocaine and had a net weight of seven grams. Detective Brown also confirmed

that the CI had no items of contraband.

The Affidavit goes on to recount the details surrounding two subsequent controlled drug

purchases between CI-1521 and Cooper, which were set up in the same way as the first two

buys. The April 27 controlled drug buy took place at Cooper's residence, and the final

transaction occurred at the Dove Shack on May 5. For both transactions, Detective Brown stated

that he conducted a post-buy search of the CI that revealed no items of contraband, and that the

white rock-like substance Cooper sold to the CI field tested positive for cocaine.

The Affidavit provided the following regarding CI-1521's credibility:

> CI-1521 has provided the Fort Wayne Police Department with information that
> the Fort Wayne Police Department has verified as credible and reliable and which
> has led to the on going investigation of individuals and the supervised purchase of
> narcotics from those individuals. During any time that CI-1521 was inside
> Cooper's residence, officers had the residence—all entrances—under constant
> visual surveillance. Additionally, on all controlled buys, CI was outfitted with an
> electronic listening device that allowed detectives to monitor conversations
> between CI and Cooper. Finally, on each buy, between the pre-search and post-
> search of CI, surveillance detectives maintained constant visual surveillance of
> CI.

(Aff. 6, DE 24-3.) In the Affidavit, Detective Brown also described the connection between

Cooper, the Dove Shack, and the address believed to be Cooper's residence. Detective Brown

provided his training and experience as a narcotics detective, including what items he expected

to be present consistent with drug trafficking, and his belief that the residence may contain such

evidence.

## DISCUSSION

When an affidavit is the only evidence presented to a judge to support a search warrant,

as it is here, the validity of the warrant rests solely on the strength of the affidavit. *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009). A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003), and *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 7th Cir. 2008) (ellipsis and brackets omitted). "The judge, however, may not solely rely upon 'conclusory allegations' or a 'bare bones' affidavit when issuing a warrant." *Id.* A reviewing court will "defer to the determination of the warrant-issuing judge that probable cause existed so long as 'there is substantial evidence in the record supporting the judge's decision.'" *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002)).

The Defendant submits that no reasonably prudent judge would have signed the warrant based on Detective Brown's Affidavit. In support of this argument, the Defendant identifies two purported deficiencies in the Affidavit. First, the Defendant contends that Detective Brown's Affidavit gives no real indicia of CI-1521's reliability. Second, he argues that the search warrant is based upon the four purported drug buys, yet, for three of the four buys, there is no statement in the Affidavit from Detective Brown that he recovered any drugs from the CI. The Defendant argues that, on the face of the Affidavit, three of the four attempted drug buys failed to produce

any drugs because Detective Brown does not explicitly say that CI-1521 handed him any drugs

before Detective Brown conducted the post-buy search that revealed no contraband. In making

these points, the Defendant is essentially arguing that probable cause was not established

because the information contained in the Affidavit came from an untested informant and lacked

sufficient corroboration.

### A.     Reliability of CI-1521

The CI's statement that he could purchase drugs from an individual named Coop were

not made pursuant to a sworn affidavit or before the issuing judge at a hearing, and thus would

most likely be insufficient on its own to establish probable cause. *See United States v. Reddrick*,

90 F.3d 1276, 1281 (7th Cir. 1996). There is no indication that the CI had been tested and proven

reliable during the course of previous investigations. However, a tip from a confidential

informant of unproven reliability may support a finding of probable cause as long as the affiant's

investigation substantially corroborates the informant's credibility. *See United States v. Rosario*,

234 F.3d 347, 351 (7th Cir. 2000). Here, the Affidavit contains much more information than a

simple tip provided by an informant— it contains details of four controlled drug purchases by

CI-1521.

The CI's credibility and his statement that he could buy a gram of crack cocaine for $100

from someone he knew as Coop at either the Dove Shack or at Coop's residence was

substantially corroborated by four controlled drug purchases. "Controlled buys add great weight

to an informant's tip." *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) (noting that

police did not simply rely on the tip of an untested informant, but "boosted" his reliability with

6

controlled buys). Two of the four purchases took place at the Defendant's home, one occurred at

the Dove Shack, and the other was completed at a gas station. After the first purchase, which

took place at the gas station, the Defendant identified the Defendant from a photograph array,

thereby establishing his knowledge in later sales about who was providing him with the drugs.

During each purchase, the CI had direct contact with the Defendant who provided him baggies of

off white rock-like substance, and these transactions were monitored and recorded by law

enforcement. During the gas station sale, an undercover officer observed the entire transaction.

Although Detective Brown did not see the transactions inside the Defendant's house or the Dove

Shack, this does not render the Affidavit account of what transpired unreliable. For each

controlled buy, the Affidavit stated that the CI was checked for contraband before making a

phone call to arrange a meeting place, given marked money, outfitted with an electronic

monitoring device, and observed meeting with the Defendant or going inside his house or place

of employment for a short period of time with the money and then returning to the police with

suspected crack cocaine in his possession.[2] *Cf. McKinney*, 143 F.3d at 329 (noting that although

police could have done more to boost the informant's reliability during controlled drug

purchases by conducting a full search and fitting him with surveillance equipment, probable

cause only requires a reasonable probability that evidence of a crime can be found at a certain

location). For each controlled buy, the suspected crack cocaine field tested positive for cocaine.

The observed phone calls that set up the buys, the observations of the CI's activity after making

the phone calls, and the reasonable inferences that can be drawn under these circumstances all

---

[2] The Defendant challenges whether the Affidavit reveals that the CI returned with any drugs after three of the four buys. The Court will address this argument in the next section.

serve to corroborate the CI's statement that he could purchase drugs from the Defendant.

The Defendant maintains that, despite the controlled purchases, CI-1521 was still not reliable. He argues that "as Det. Brown relates the facts of the buys CI-1521 is often isolated while alone with Cooper . . . out of view of Det. Brown and is apparently not wearing a recording device from which Det. Brown could otherwise attempt to verify the facts that are related [by] CI 1521." (Def.'s Reply 2, DE 32.) This argument has no force because it misconstrues the Affidavit, which provided that "on all controlled buys, CI was outfitted with an electronic listening device that allowed detectives to monitor conversations between CI and Cooper." (Aff. 6.)

Detective Brown's Affidavit contains more than bare bones conclusions and the statements of an untested informant. It provides details of four separate controlled drug buys. Thus, the Court finds that the Affidavit provides sufficient reason for crediting the source of the information.[3]

## B.    Contraband Recovered from the Controlled Purchases

The Defendant argues that, because the Affidavit states for three of the controlled buys that no contraband was found during the post-buy search, and because Detective Brown did not explicitly say that the CI handed him baggies after three of these purchases, the only reasonable conclusion that any judge could have reached was that no drugs were exchanged and that the

---

[3] The Court also notes that an informant's admission of personal involvement in criminal activity is presumed reliable. *United States v. Harris*, 403 U.S. 573, 583–84 (1971); *United States v. Jones*, 208 F.3d 603, 609 (7th Cir. 2000) (noting that an informant's statement that she purchased drugs from the defendant was against her penal interest and was an additional factor pointing to the reliability and credibility of her assertions).

Defendant was not a drug dealer. The Defendant's argument relies on a "hypertechnical, rather than a commonsense," interpretation of the Affidavit. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). When an affidavit provides the underlying circumstances upon which an affiant bases his belief that probable cause exists, when reason for crediting the source of the information is given, and when a magistrate has found probable cause, "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

"Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (finding that controlled buy was adequate to support probable cause where the confidential informant entered the building without contraband, exited moments later, and produced cocaine). It would defy common sense to interpret the statement in the Affidavit that no items of contraband were discovered during the post-buy search to mean that there were no drugs. For each buy, Detective Brown had already referenced the drugs when he stated that the CI exchanged the money for a baggie containing an "off-white rock like substance" that was suspected to be crack cocaine. He referenced the drugs again when he revealed the positive results of the field test of "*the* white rock like substance," presumably referring to the very same substance that was exchanged for money. (Aff. 3, 4, 5 (emphasis added).) Because the police could have only tested a substance that they first gained possession of, the common sense view of the Affidavit is that the drugs they tested were those they obtained from the CI and that the post-buy searches were intended to reveal whether he obtained additional contraband during the short time that he was out of police presence, or kept any of the buy money or drugs. This

conclusion is supported by the fact that after the second transaction, in which Detective Brown explicitly stated that CI-1521 handed him the baggie, he conducted the same type of search and recorded that no contraband was found.

The Defendant also challenges the April 20 transaction as to which Detective Brown specifically stated that the CI handed him the baggie of suspected crack cocaine. For that transaction, the Defendant criticizes the failure of Detective Brown to allege that the CI affirmatively identified Cooper as the person who sold him the drugs, and argues that this was crucial because the CI was the only person with first hand knowledge of who gave him the crack cocaine.

Detective Brown clearly stated in the Affidavit that Cooper was the person giving CI-1521 the baggie of suspected drugs while they were inside his residence. Although this identification was being relayed to Detective Brown by CI-1521, the CI's ability to identify Cooper had already been established from a photograph array. There is no basis to doubt the CI's reliability on this point. Moreover, even without this information, the Affidavit still contains probable cause to search the Defendant's residence as a place where contraband was likely to be found. During this buy, Detective Brown rode to the Defendant's residence hidden in the back seat of the CI's car. His Affidavit account reveals that the CI was at the house less than five minutes, that the CI returned directly to his car, that they drove away together, and that the CI handed him the baggie of suspected drugs that was later confirmed to be cocaine. Thus, whether it was the Defendant or someone else inside the house who handed the CI the crack cocaine, the circumstances indicate the probable, if not likely, presence of illegal drugs in that particular house, which was the focus of the search warrant.

Considering that the probable cause inquiry is practical, not technical, *Gates*, 462 U.S. at 230–31, the Court finds, based on the totality of circumstances, that the Affidavit set forth sufficient evidence to induce a reasonably prudent person to believe that a search of the residence would uncover evidence of a crime related to distribution of crack cocaine.

**C.      Good Faith Exception**

In response to the Defendant's Motion to Suppress, the Government presents the alternative argument that even if the Court were to believe that probable cause was lacking, the good faith exception would apply to the search. Because the warrant was supported by probable cause, the Court does not need to address the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984). *See United States v. Farmer*, 543 F.3d 363, 378 (7th Cir. 2008).

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Suppress [DE 23] is DENIED. A telephonic scheduling conference is set for Thursday, October 15, 2009 at 11:30 AM. The Court will initiate the call.

SO ORDERED on October 14, 2009.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT