**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CR-51-TLS |
| | ) | |
| JERMAINE ASKIA COOPER | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Renew Motion for Acquittal [ECF No. 95]

filed pursuant to Rule 29(c)(1) of the Federal Rules of Criminal Procedure on May 27, 2010, by

the Defendant, Jermaine Askia Cooper. This Motion follows the return of a jury verdict on May

24, 2010, finding the Defendant guilty of three counts of distributing crack cocaine (Counts 1, 3,

and 4) and one count of possessing with intent to distribute crack cocaine (Count 5). The jury

also convicted the Defendant of being a felon in possession of a firearm (Count 7) and

attempting to obstruct justice (Count 8). The jury returned a not guilty verdict for one count of

distributing crack cocaine (Count 2) and for possessing a firearm in furtherance of a drug

trafficking crime (Count 6). The Defendant argues that the evidence was insufficient to warrant a

conviction on Counts 1, 3, 4, 5, and 8 of the Superceding Indictment. For the following reasons,

the Court will deny the Defendant's Motion.

**STANDARD OF REVIEW**

Under Federal Rule of Criminal Procedure 29, a court may acquit a defendant of "any

offense for which the evidence is insufficient to sustain a conviction." When reviewing a motion

for judgment of acquittal pursuant to Rule 29, the Seventh Circuit mandates that the district court

determine:

whether at the time of the motion there was relevant evidence from which the jury
could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing
the evidence in the light most favorable to the government . . . bearing in mind
that it is the exclusive function of the jury to determine the credibility of
witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

*United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989); *see also United States v. Bond*, 231

F.3d 1075, 1076 (7th Cir. 2000). In short, the court views all the evidence in the government's

favor and is absolutely barred from second-guessing the jury's credibility determinations or

findings of fact. *Reed*, 875 F.2d at 111. Instead, the court merely assesses the record to determine

if all the admissible evidence supports the defendant's adjudication of guilt beyond a reasonable

doubt. *Id.*; *United States v. Taylor,* 226 F.3d 593, 596 (7th Cir. 2000) (stating that the jury's

verdict will not be overturned unless "the record is devoid of evidence from which the jury could

reach a finding of guilt").

## COUNTS 1, 3, AND 4

Counts 1, 3, and 4 of the Superceding Indictment charge the Defendant with distributing

crack cocaine on four separate dates. At trial, the Government presented the testimony of Fort

Wayne Police Department (FWPD) Vice and Narcotics Detective Mark Brown, FWPD

Surveillance Detective Craig Wise, Sergeant Jon Noll, and a confidential informant, Christopher

Minnick. The Government introduced audio recordings of three controlled buys where Minnick

purchased crack from the Defendant: on April 15, 2009, at a gas station; on April 27, 2009, at the

Defendant's house; and on May 5, 2009, at the Defendant's business, a bar in Fort Wayne.

Testimony was offered regarding a fourth controlled buy (the basis for Count 2 for which the

Defendant was acquitted), but no audio was captured for that buy because the recorder

malfunctioned. The Government also presented for the jury's review the drugs, the Defendant's phone records, which showed his contact with Minnick during times and dates that corresponded to the controlled purchases of drugs, and the six person photo array from which Minnick identified the Defendant as the person who sold him crack cocaine.

In his Motion for Judgment of Acquittal, the Defendant argues that no rational trier of fact could find beyond a reasonable doubt that it was the Defendant who provided drugs to Minnick during the controlled buys that formed the basis of Counts 1, 3 and 4 of the Superceding Indictment. The Defendant argues that the testimony offered by Minnick was inherently unreliable because Minnick has a prior conviction, he was using drugs himself, he had sold drugs himself, he was a first-time confidential informant, he was paid for his informing, he admitted to having a poor memory regarding addresses, names, and numbers, and he provided testimony that was inconsistent on two points with the testimony of Detective Brown.

The Defendant's argument is not persuasive. The testimony elicited at trial was sufficient to allow the jury to be well aware of Minnick's shortcomings as a witness and it is within the province of the jury to choose whether to believe "confessed law-breakers or known liars." *United States v. Algee*, 309 F.3d 1011, 1016 (7th Cir. 2002); *see also United States v. Pagan*, 196 F.3d 884, 889 (7th Cir. 1999) (holding that a witness's history of drug use and the fact that he was paid for his information did not render his testimony unreliable as a matter of law because "the extent to which a witness's personal failings and motivations may have influenced his testimony was for the jury to decide"). The Court instructed the jury to consider Minnick's testimony with caution and great care and to consider his previous conviction in deciding whether his testimony was truthful.

It is also within the province of a jury to determine whether inconsistencies in the testimony of witnesses rendered the testimony incredible. *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001). A court should only overturn a conviction based on a credibility determination if the witness's testimony was incredible as a matter of law—meaning "impossible under the laws of nature." *Id.* "That is an exacting standard, and can be met, for instance, by showing that it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all." *Id.* (internal quotation marks omitted). Disagreements that are routine conflicts in testimony are inconsistencies that are within the jury's province to sort out. *Id.* The inconsistencies identified by the Defendant involve the timing of a particular conversation the Defendant had with Detective Brown and whether the Detective Brown's search of Minnick before he made the controlled buys was a pat down or a strip search. It was for the jury to sort out these inconsistencies as it considered which testimony to believe. *See United States v. Lewis*, — F.3d —, 2011 WL 1261146, at *5 (7th Cir. Apr. 6, 2011) (finding that overall behavior and testimonial inconsistencies of a witness "presented a classic question of credibility, and it is well settled that credibility assessments are the province of they jury").

Similarly, with regard to the Defendant's argument that the jury could not rely on Minnick's identification of the Defendant as the person who sold him drugs, the Defendant has not demonstrated that Minnick's testimony was incredible as a matter of law. It was certainly possible for Minnick to observe the person who sold him the drugs and Minnick testified that he had known the Defendant for over five years as a person who supplied him with drugs.

The Court also notes that it was not necessary for the jury to rely solely on Minnick's

4

testimony to find that the elements of the drug charges were established beyond a reasonable doubt. Other evidence in the record provided ample proof from which a rational trier of fact could find that the Defendant knowingly and intentionally distributed crack cocaine to another person. This included the testimony of the detectives providing surveillance for the controlled buys and the audio recordings of those purchases. The Defendant has not shown that the record is devoid of evidence from which the jury could reach a finding of guilt on counts 1, 3, and 4 of the Superceding Indictment and he is not entitled to a judgement of acquittal.

### COUNT 5

In support of the charges set forth in Count 5 of the Superceding Indictment, knowingly and intentionally possessing with intent to distribute crack cocaine, the Government admitted into evidence controlled substances that were recovered from the Defendant's residence on May 11, 2009, during the execution of a search warrant. The Government also admitted items that were located in various rooms throughout the house, including documents with the Defendant's name and address, firearms, ammunition, money, marijuana, digital scales, and glass jars with white residue, and law enforcement officers testified regarding the location of those various items. Detective Brian Martin, who testified as a drug expert, explained that the items were used to manufacture crack from powder cocaine, that the amounts of drugs recovered were consistent with distribution quantities, and that firearms are tools of the drug trade. A fingerprint expert testified that the Defendant's fingerprint was recovered from one of the glass items that Detective Martin testified was used to convert powder cocaine to crack cocaine.

To convict the Defendant for unlawful possession with intent to distribute, the jury had to

5

find that he possessed crack and that he did so with the intent to distribute it to another person. The Defendant argues that no rational trier of fact could find beyond a reasonable doubt that the Defendant, on or about May 11, 2009, possessed the drugs found in the home because the Government did not adequately connect him to the drugs. He argues that Minnick was the only person whose testimony placed the Defendant in the home, but that this was two weeks before the search. He notes that the probation officer who conducted a home visit on April 17, 2009, did not see any of the contraband, and also touts his own testimony that he had not been staying in the house during the week prior to May 11.

The Defendant is not entitled to a judgment of acquittal for Count 5. Viewing the evidence in a light most favorable to the Government, there was sufficient evidence tying the items of contraband found inside the house to the Defendant such that a reasonable jury could find that he possessed crack cocaine with the intent to distribute it. Possession may be either actual or constructive, the latter existing when a person knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005); *see also United States v. Lane*, 591 F.3d 921, 926–27 (7th Cir. 2010) (stating that police "were not required to catch [the defendant] with his hand in the cookie jar . . . in order to satisfy the possession element" of 21 U.S.C. § 841(a)(1), because the "government only needed to prove constructive possession, which can be established through circumstantial evidence and exists where the evidence demonstrates ownership, dominion, authority, or control"). The jury was entitled to weigh the evidence and make reasonable inferences that the house and its contents belonged to the Defendant. This evidence included Minnick's testimony that the Defendant sold him crack

6

from the residence on April 27, the documents and items found inside the house that displayed

the Defendant's name and address, the probation officer's testimony that the Defendant indicated

for purposes of supervised release that he lived alone in the residence, and the Defendant's

fingerprint on an item used to manufacture crack. In addition to this evidence, the jury heard

evidence regarding the Defendant's post arrest attempt to pay another person take responsibility

for the items inside the home and provide the specific story the individual should give to police.

In one letter, the Defendant wrote the address where he lived so that the person would know

which house was supposed to be the subject of his story. The jury could weigh this against the

Defendant's self-serving statement that he had not been living at the house the week prior to the

search, the fact that a probation officer did not see drugs during a scheduled and announced

home visit, and the fact that Minnick did not see the items when he stepped briefly inside the

front door to buy drugs, and nevertheless determine that Government met its burden of proof for

Count 5. The Defendant's Motion will be denied.


## COUNT 8

In support of the charge that the Defendant attempted to obstruct justice in violation of 18

U.S.C. § 1512(c)(2), the Government introduced letters that the Defendant wrote attempting to

find another person to take responsibility for the items found inside his house. He promised to

pay the individual and to pay for his legal fees, bail, and attorney if he was arrested, and detailed

the story he was supposed to tell to the police. The Defendant instructed the person to study the

letter so he would know where the items found were located throughout the house. The

Government also introduced recordings of the Defendant's telephone calls and jail visits that

further corroborated his attempts to locate a person who would lie to protect him from being convicted of possessing with intent to distribute a controlled substance.

The Defendant argues that no rational jury could find beyond a reasonable doubt that he corruptly attempted to obstruct, influence, or impede an official proceeding because the natural and probable effect of his actions would not have interfered with the due administration of justice. The Defendant's position is that once the Government learned that the Defendant was going to call a witness to testify that the drugs and guns were his, "the paid witness would in all likelihood have been the subject of an investigation and likely an indictment for some offense or another and would never have actually ended up testifying in the Defendant's trial." ( Def.'s Br. 6–7, ECF No. 115.)

The Defendant's argument is not persuasive. The natural and probable result of what the Defendant attempted to do—pay someone to commit perjury—is directly related to an official proceeding and has at least a reasonable tendency to influence, obstruct, or impede the due administration of justice. The false testimony was intended to refute the Government's evidence that the Defendant exercised dominion and control over the drugs and guns found in his house on May 11. His possession is a material element of the charged offense and false testimony on this point would have introduced doubt into the record. The evidence supports the Defendant's adjudication of guilt beyond a reasonable doubt.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Defendant's Motion to Renew Motion for Acquittal [ECF No. 95]. This matter is scheduled for sentencing on Thursday, June 16, 2011,

at 11:00 AM.

SO ORDERED on May 12, 2011.

s/ Theresa L. Springmann

THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT